# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SHERRI L. STOCKS,

               **Plaintiff,**

    **v.**                                  **Case No. 11-C-00581**

LIFE INSURANCE COMPANY OF
NORTH AMERICA, and
GREDE II LLC,

               **Defendants.**

---

# DECISION AND ORDER

---

        This action is before the Court on the motion of Defendant Grede II LLC ("Grede") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claim against it for failure to state a cause of action. The Court begins by providing some pertinent background information as well as a summary of the allegations of the Complaint. For the purposes of this Decision and Order, the Court accepts all well-pleaded factual allegations of the Complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Ray v. City of Chicago*, 629 F.3d 660, 662 (7th Cir.) *cert. denied*, ___ U.S. ___ , 132 S.Ct. 100 (2011).

## Background

In May 2011, in the Circuit Court for Waukesha County, Wisconsin, the Plaintiff Sherri L. Stocks ("Stocks") filed a Complaint against the Defendants, Life Insurance Company of North America ("LINA") and Grede. Stocks seeks to recover death benefits that she alleges are due under a life insurance policy issued by LINA.

On June 16, 2011, LINA removed the case to federal court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. Thereafter, Grede filed its Rule 12(b)(6) motion to dismiss.

In a January 23, 2012, Decision and Order, this Court noted that the notice of removal was defective in that it did not sufficiently plead the citizenship of Grede's members as of the date of removal. Because the deficiency had become material due to Grede's motion to dismiss, the Court directed LINA to file an amended notice of removal identifying all the members to Grede as of the date of removal. In response, Grede filed an amended notice of removal that relies entirely on federal question jurisdiction.

Stocks was the primary beneficiary of a $50,000 life insurance policy ("the Policy") issued by LINA to her husband, Jeffrey T. Stocks ("Jeffrey").[1] (Compl. ¶¶ 4-5.) Following Jeffrey's death on August 20, 2010, Stocks submitted a claim to LINA for the death benefit payable under the Policy and LINA denied the claim. (*Id*. at ¶¶ 6-8.) The denial forms the basis for Stocks' causes of action against LINA for breach of contract, bad faith in the

---

[1]The Court departs from its usual practice of referring to parties by their surname to distinguish between the Plaintiff and her deceased husband. No disrespect is intended.

denial of her insurance claim, and punitive damages – causes of action one through three, respectively. (*Id*. at ¶¶ 9-10, 12, 16.)

Stocks' fourth cause of action is her sole claim against Grede. The Complaint frames Stocks' right to relief on this claim in the alternative: "should it be determined that [LINA] is not obligated to pay the death benefit claim of [Stocks] pursuant to the Policy, then [Stocks] has been damaged by Grede's breach of fiduciary duty as Plan Administrator of the Plan in an amount not less than the death benefit." (*Id*. at ¶ 25.)

Grede, Stocks' employer, was the plan administrator of the group life and accidental death and disability plan ("the Plan") that provided life insurance coverage for Jeffrey. (*Id*. at ¶¶ 18-20.) The Plan had a conversion privilege which allowed participants to convert their group life insurance coverage under the Plan to an individual conversion life insurance policy issued by LINA upon termination of coverage under the Plan. (*Id*. at ¶ 21.) According to the Complaint, "Grede breached its fiduciary duty as Plan Administrator of the Plan in that it failed to properly advise [Stocks] and Jeffrey . . . regarding his conversion privilege for life insurance under the Plan." (*Id*. at ¶ 24.)

## Analysis

By its Rule 12(b)(6) motion to dismiss, Grede urges dismissal of Stocks' breach of fiduciary duty claim on two grounds: (1) Stocks' state law claim is preempted by the Employee Retirement and Income Security Act of 1974 ("ERISA"); (2) or alternatively, even if Stocks' breach of fiduciary claim is an ERISA claim, it fails as a matter of law because

ERISA does not permit individual beneficiaries to recover compensatory damages for breaches of fiduciary duty. (Def.'s Mem. Mot. Dismiss, 2.)

The Complaint does not specify whether Stocks' breach of fiduciary duty claim against Grede is a claim under Wisconsin state law or a federal claim under ERISA. Section 514(a) of the ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Plan at issue in this case is subject to ERISA and its preemption provision because it is (1) a plan, fund or program, (2) established or maintained, (3) by an employer, (4) for the purpose of providing death benefits, (5) to participants or their beneficiaries. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan"); *see also Ed Miniat, Inc. v. Global Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). "A suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted." *Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 777-78 (7th Cir. 2006) (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 392 (2002)). The Supreme Court has expressly held that ERISA preempts tort claims under state law asserting improper processing of a claim for benefits under an ERISA-regulated plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987).

As previously indicated, Grede points out that if Stocks' claim of breach of fiduciary duty is a claim under Wisconsin state law, her claim is preempted by ERISA. (Def.'s

Mem. Mot. Dismiss 2.)  Stocks responded by specifying that she "asserts that under ERISA she has a valid claim against Grede." (Pl.'s Mem. Opp'n Mot. Dismiss 3.)

Grede has accepted Stocks' characterization of her claim. "In response to Grede's motion to dismiss, she has now clarified that her Complaint is a request for 'appropriate equitable relief' pursuant to ERISA § 502(a)(3)." (Def.'s Reply Br. Mot. Dismiss 1.)  The question arises if Stocks may do so.  Generally, pleadings may not amended by a statement in a party's brief.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

However, Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b) if the original pleading is one to which a responsive pleading is required.  *See* Fed. R. Civ. P. 15(a)(1)(B). Stocks filed her memorandum in opposition to Grede's motion to dismiss six days after Grede filed its Rule 12(b)(6) motion to dismiss.  Therefore, Stocks was within the allowed time for amending her pleading as a matter of course.

Though Stocks did not file an amended Complaint, pursuant to Rule 15(a)(1)(B), it is clear that Grede has assented to the amendment. The Court therefore applies Rule 15(a)(1)(B) *sua sponte* and will treat Stocks' original Complaint as amended by her memorandum to the extent that it clarifies that her breach of fiduciary duty claim is a claim for relief under § 502(a)(3) of ERISA and is not a common law breach of fiduciary duty claim under Wisconsin state law.  The amendment does not affect any of the other allegations and

facts as stated in the Complaint. However, Stocks' amendment of the Complaint to indicate that her breach of fiduciary claim is an ERISA claim, renders Grede's preemption argument moot.

Having clarified that her breach of fiduciary claim is a request for appropriate equitable relief under § 502(a)(3), Stocks argues that the Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 563 U.S. ___, 131 S.Ct. 1866, 1879-80 (2011), controls the disposition of Grede's motion. Stocks contends that the *CIGNA* decision "provides for recovery by individual beneficiaries under ERISA breach of fiduciary duty suits" and "makes clear that equitable relief in a § 502(a)(3) action for fiduciary relief can include monetary relief." (Pl.'s Mem. Opp'n Mot. Dismiss 2-3.) Responding to Stocks' memorandum, Grede has refined its argument as follows: first, *CIGNA* is factually distinguishable from this case and thus does not control the Court's treatment of this motion; second, binding precedent of the Court of Appeals for the Seventh Circuit makes clear that monetary compensation in the form of legal relief is not available as a remedy for a breach of fiduciary duty under ERISA and *CIGNA* did not disturb such holding; and third, Stocks has not adequately alleged a basis for her claim because she has not identified any provision of the Plan or ERISA that Grede is alleged to have breached. (Def.'s Reply Br. Mot. Dismiss 1, 4.)

As will be further detailed, *CIGNA* is factually distinguishable from the present case. In *CIGNA*, a group of employees brought a class action against their employer, CIGNA, alleging that it changed its retirements benefits plan without making adequate disclosures to

6

the detriment of participants. *CIGNA*, 131 S.Ct. at 1870. The district court found that CIGNA's disclosures to plan participants did not reveal several key features about the new plan, that such disclosures were therefore incomplete and inaccurate, and that CIGNA intentionally misled employees by purposefully not providing before and after comparisons of the old plan versus the new plan. *Id.* at 1874. The district court correctly held that CIGNA's actions violated the notice and disclosure provisions of ERISA §§ 102(a), 104(b), and 204(h). *Id.* The district court incorrectly held that ERISA § 502(a)(1)(B) provided the legal authority to reform the CIGNA plan to more adequately match the representations CIGNA had made about the plan and to enforce the plan as reformed. *Id.* at 1876-77.

The Supreme Court reversed, holding that § 502(a)(1)(B) only grants the power to enforce the original terms of a plan and does not provide authority to change or reform the terms of the plan and enforce it as reformed. *Id.* at 1876-78. Justices Antonin Scalia and Clarence Thomas, concurring in the decision, felt that the Court should have ended its opinion there. *Id.* at 1882 (Scalia, J., concurring). In what Scalia calls "blatant dictum," *id.* at 1884, the Court further held that "the types of remedies the [district] court entered here fall within the scope of the term "appropriate equitable relief" in § 502(a)(3)." *Id.* at 1880.

Stocks argues that this portion of the holding grants her the right to the relief she seeks. However, *CIGNA* is factually distinguishable from this case because *CIGNA* involved a reformation of a benefits plan. *See id.* at 1879. In this action, Stocks seeks to have the Plan enforced as written in order to receive the death benefit due under the Policy. (*See* Compl.

¶ 21). The holding in *CIGNA* thus does not control the Court's treatment of Grede's motion.

Furthermore, even if it were not factually distinguishable, *CIGNA* does not provide grounds for the relief Stocks seeks. Even though the district court's injunction required CIGNA to pay already retired beneficiaries money owed to them under the plan as reformed, the Court reasoned that the payment of monetary damages did not remove the district court's remedy from the category of traditional equitable relief because it "resembles forms of traditional equitable relief." *Id.* at 1879-80. The Court analogized the *CIGNA* remedy to the traditional remedy of surcharge, whereby equity courts traditionally had the power to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty or to prevent the trustee's unjust enrichment. *Id.* at 1880. Thus, Stocks correctly interprets *CIGNA* as standing for the limited proposition that equitable relief under § 502(a)(3) may, on rare occasions, take the form of monetary compensation so long as it may be accurately characterized as an equitable remedy, not a legal one.

However, despite her best efforts to characterize her requested relief as equitable, it is clear that the remedy Stocks seeks is purely legal and thus *CIGNA*'s holding is inapplicable to this case. The Complaint explicitly states that "[if LINA] is not obligated to pay the death benefit claim . . . pursuant to the Policy, then the plaintiff has been damaged by Grede's breach of fiduciary duty . . . in an amount not less than the death benefit that would have been payable pursuant to the Policy." (Compl. ¶ 24.) Phrased differently, if LINA is not obligated to pay ordinary monetary contract damages to Stocks, then Grede is on the hook to

pay those same damages. This is not the type of equitable monetary compensation envisioned by the Supreme Court in *CIGNA*.

Furthermore, on similar facts to this case, the Seventh Circuit explicitly held that § 502(a)(3) does not allow the type of "make-whole relief" Stocks has requested. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 483 (7th Cir. 2010). *Kenseth* involved a plan participant who obtained pre-authorization for surgery from her HMO ("Dean") only to have Dean deny coverage for her claim the day after her surgery. *Id*. at 456. Kenseth filed suit against Dean, seeking relief under theories of equitable estoppel, breach of fiduciary duty, and relevant state law. *Id*. After a lengthy discussion about the extent and scope of fiduciary duty imposed by ERISA, the court concluded that "[Kenseth] has, at the least, presented evidence that would permit the factfinder to conclude that she was harmed by Dean's alleged breach of fiduciary duty." *Id*. at 481. The court, however, could not determine from Kenseth's complaint "whether there is any form of relief that Kenseth is seeking for Dean's alleged breach of fiduciary duty that ERISA actually authorizes. Kenseth's complaint suggests that she is seeking compensatory relief for the harm resulting from the alleged breach. But that type of relief is not authorized by ERISA." *Id*.

Though the *Kenseth* court acknowledged that monetary restitution may take the form of equitable or legal relief, it noted that "under section 1132(a)(3), restitution is permitted only when it may accurately be characterized as an equitable remedy. The classic example is when the defendant has wrongfully obtained or withheld the plaintiff's money or property."

9

*Id.* at 482.  Thus, an interest in money which is akin to a property interest[2] may give rise to equitable relief, but an interest in money created purely by contract will not.  Similar to Stocks' Complaint,

> [h]ints may be found in . . .Kenseth's complaint suggesting that Dean was wrong in refusing to cover her . . . procedure and attendant hospitalization; but this sort of allegation will not support an award of equitable restitution.  This is, in effect, an allegation that Dean erred in denying Kenseth's claim for insurance benefits.  However, a denial-of-benefits claim may only be pursued under section 1132(a)(1)(B) [ERISA § 502(a)(1)]. . . . Notwithstanding the obstacles to relief[3] under section 1132(a)(1)(B), Kenseth may not obtain comparable relief under the guise of a claim for breach of fiduciary duty. . . . The relief that Kenseth truly seems to seek is . . . legal rather than equitable in nature.  Her complaint, for example, alleges that she has suffered a pecuniary loss and other consequential damages as a result of Dean's actions. . . . But this is the sort of make-whole relief that is not typically equitable in nature and is thus beyond the scope of relief that a court may award pursuant to section 1132(a)(3) [ERISA § 502(a)(3)].

*Kenseth*, 610 F.3d at 482-83.  Though *CIGNA* approved monetary compensation under § 502(a)(3), it did so on a narrow set of facts and the opinion emphasized that such an award was only permitted because it resembled traditional equitable remedies.  Thus, because *CIGNA* did not broadly sanction monetary awards under § 502(a)(3), as Stocks contends, it merely

---

[2]Examples of this type of property interest in money would include a trustee's wrongful refusal to distribute funds or a sales agent's bad faith retention of a buyer's earnest money.

[3]The court had previously explained that the terms of Kenseth's coverage granted Dean significant discretionary authority in interpreting coverage under the policy.  "No doubt in view of the broad discretion granted to Dean, Kenseth herself has not asserted a denial-of-benefits claim challenging Dean's construction of the Certificate's language.  See 29 U.S.C. § 1132(a)(1)(B)."  *Kenseth*, 610 F.3d at 476.

reinforced the *Kenseth* holding that monetary damages are only available under § 502(a)(3) if the right to relief is equitable, not legal.

Having determined that the relief Stocks seeks is, in reality, a form of legal relief not permitted under § 502(a)(3) and that her claim therefore fails as a matter of law, the Court declines to address Grede's argument that Stocks has failed to state a claim upon which relief can be granted because she has not cited any provision of the Plan or ERISA that Grede is alleged to have breached. Grede's Rule 12(b)(6) motion to dismiss is granted on the ground that that the relief Stocks seeks is, in reality, a form of legal relief not permitted under § 502(a)(3).

## Other Matters

LINA filed its answer in June 2011. However, due to the pending motion to dismiss and the need to establish the basis for its subject matter jurisdiction over this matter, the Court has not conducted a Rule 16 scheduling conference. At this juncture, the case is ready for a telephone scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure. The Court will initiate the call.

The purpose of the conference call is to establish a scheduling order which will limit the time:

1.  to join other parties and to amend the pleadings;

2.  to file motions; and

3.  to complete discovery;

The scheduling order may also:

4.      modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted;

5.      provide for the disclosure or discovery of electronically stored information;

6.      include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced;

7.      the date or dates for conferences before trial, a final pretrial conference, and trial; and

8.      any other matters appropriate in the circumstances of the case.

The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent.  Fed. R. Civ. P. 16(b)(4).

The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1).  See Attachment A.  Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least 21 days prior to the initial scheduling conference described above.  The Rule 26(f) conference may be conducted by telephone.  Rules 26(f)(2) and (3) mandate that the parties, within 14 days of their conference:  (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents.  In addition to the matters specified in Rules

26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case. The written report must include the telephone numbers where the parties can be reached for this call.

In addition, the Court is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the Principles Relating to the Discovery of Electronically Stored Information. Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the Standing Order Relating to the Discovery of Electronically Stored Information in their particular case. (*See* Attachments B & C).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Grede's 12(b)(6) motion to dismiss Stocks' breach of fiduciary duty claim (ECF No. 8) is **GRANTED**;

Grede is **DISMISSED** from this action; and

The remaining parties **MUST** participate in a telephone scheduling conference which the Court will conduct on **Tuesday, May 8, 2012, at 9:30 a.m.** The Court will initiate the call.

Prior to such conference, the remaining parties **MUST** also comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure as outlined above.

Dated at Milwaukee, Wisconsin, this 8th day of March, 2012.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**